[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CERTAIN MOTIONS FOR CONTEMPT DATED MAY 22, 1998, JULY 2, 1998 AND NOVEMBER 24, 1998
The file and record in this matter reflects the following by way of review.
This matter was first initiated by the Plaintiff by complaint dated December 4, 1996 and returnable January 7, 1997 seeking a dissolution of the marital union and other relief as of record appears.
Both of the parties were represented by counsel.
An answer and cross complaint was filed on December 31, 1996.
Various motions were filed and acted on prior to hearing and disposition.
On September 22, 1997, after executing a 12-page detailed marital settlement agreement, which was dated September 22, 1997, CT Page 15451 the parties came before the Court, Koletsky, J., and were heard and judgment entered on said date, in accordance with the terms of the marital agreement.
On September 22, 1997, pursuant to the judgment of dissolution, a Qualified Domestic Relations Order was executed by the Court, Koletsky, J.
Thereafter, on April 6, 1998, pursuant to a motion to open judgment, the Court Martin, J., modified the order of support upward, determined an arrearage and entered certain other orders.
Thereafter, three motions for contempt were filed.
Plaintiff's first motion, dated May 22, 1998, claimed that pursuant to an order of April 16, 1998 the Defendant had failed to pay Plaintiff's attorneys' statement in the amount of $1,725.00 and had not produced a copy of his 1997 tax return.
The second motion, dated July 2, 1998, filed by the Defendant, claimed that the Plaintiff had willfully removed items of personal property in violation of the marital agreement when she vacated the premises and has refused to return the same.
The third motion, dated November 24, 1998, filed by the Plaintiff, claimed that the Defendant had not provided funds for the minor child's summer and extracurricular activities.
The parties appeared before the Court on December 16, 1998 with their counsel and were heard on all three motions.
The Court makes the following findings of fact.
As to the first motion:
Plaintiff's position is based on the claimed order of Martin, J., of April 16, 1998.
There is no order of April 16, 1998 as best this jurist can perceive.
There is a paragraph added to the judgment dated April 16, 1998, which reads as follows:
 April 6, 1998 CT Page 15452
 The within judgment is hereby modified so that the Defendant shall pay $160.00 a week for child support by immediate wage withholding. The defendant shall pay an arrearage of $120.00, one-half in thirty days and one-half in sixty days. The defendant shall pay the plaintiff's counsel fees in 30 days and shall produce his Maine tax returns to the plaintiff by April 15th yearly.
Signed, Robert Martin Judge
The motion that generated the above order was one having to do with refinancing the mortgage noted in the decree.
There was no transcript of the proceedings on April 6, 1998 made available to this jurist.
According to the testimony on December 16, 1998, the amount of the attorneys' fees claimed was not known to the Court, Martin, J., and in any event, was not requested in the motion then before the Court.
The testimony on December 16, 1998, in any event, indicated that the Defendant had the right to dispute the fees claimed and this is born out by Defendant's Exhibits 1 and 2, which stated in part:
Defendant's Exhibit #1
. . . as you will recall, Judge Martin ordered that the fees would be payable within 30 days if not disputed. Therefore, please accept this letter as disputing your fees. Defendant's Counsel.
From Defendant's Exhibit #2. The Court notes:
Dear Atty. Sheppard:
 I am in receipt of the Superior Court's order dated 4/16/98 reflecting the stipulation entered on the record in relation to our last short calendar appearance. I believe the order is incorrect. It does not state that if your fees are disputed we would return to court before Judge Martin to resolve the issue. Furthermore, it is my understanding that since CT Page 15453 you issued a subpoena for Mr. D'Eugenio's payroll records, no further inquiry would be necessary. You had no pending motion for his tax return on a yearly basis, so I question this portion of the order.
 Please contact me so that we may discuss this matter so as to avoid a motion for articulation. Also, I believe Judge Martin ordered that we produce the agreement to writing and submit the same to the court. To date, I have not received a copy of the agreement."
The Court notes that the scrivener of the above exhibit undoubtedly meant to say "reduce the agreement to writing" rather than "produce" the agreement.
Plaintiffs' Exhibit 1, the statement of Counselor Sheppard for attorneys' fees, claims a total of 11.5 hours at $150.00 an hour, including "drive time" and hour-long telephone calls with the Plaintiff for a total of $1,725.00.
The statement has been disputed, the amount was unknown when the Court acted on the same, and in this jurist's opinion is manifestly excessive mindful of the issue involved.
As to the issue of the failure to provide a tax return of the Defendant, the Court notes category 4 on page 4 of the extremely detailed marital agreement worked out by both counsel which requires the Plaintiff only to provide tax returns, not the Defendant.
In addition, the motion then before the Court was one of contempt, not a motion to modify the judgment.
As to the motion of contempt dated May 22, 1998, the Court finds on the basis of exhibits and testimony that there was no contempt.
The Defendant is not obligated to have the Plaintiff monitor his income.
As to the second motion for contempt dated July 2, 1998, filed by the Defendant, having to do with a claim of removal of personal property by the Plaintiff when she vacated the former residence. CT Page 15454
The alleged items are as follows: a workbench vise, a shelf, a garden hose, some TV cable wiring, cordwood, cement mixer, lumber, a potting bench, a brass door assembly, a shovel, a leaf rake, a socket set.
The Defendant acknowledges that all appliances were left on the premises, two refrigerators, two washing machines, two dryers, a stove.
No fixtures were removed, the premises were not damaged.
The only appliances taken were a coffee pot, a grinder, a toaster oven and a mixmaster.
The Court is satisfied that the items Plaintiff took were items that had been given to her or needed in the conduct of her modest business known as Salem Country Gardens.
The claimed cordwood from the photo exhibits Defendant's 3 were various branches and some logs, scarcely cut and split cordwood which could be used in a stove or furnace.
As to the second motion dated July 2, 1998, there is no contempt.
The third motion of contempt dated November 24, 1998 is predicated on Plaintiff's claim that the Defendant had not provided funds for the minor child's summer and extracurricular activities including horseback riding, rowing, etc.
The short answer to this claim is that the Defendant is not obligated to do so.
The Court sets forth that portion of the marital settlement agreement which controls.
 Summer and extracurricular activity expenses.
The parties shall discuss additional expenses for Francesco's summer activities and extracurricular activities with the intention of maintaining a reasonable level of activity for the child. Any obligation to contribute to the expenses shall be mutual agreement.
From the testimony there was never any mutual agreement. CT Page 15455
There is no contempt as to this motion.
The Court notes that the Defendant refinanced the mortgages in accordance with the agreement.
There was no evidence of intentional delay in doing so to the prejudice of the Plaintiff and her hope of purchasing property in Danielson. The Plaintiff did not lose her deposit on the Danielson property.
Both parties, presumably of their own free will and out of an abiding love and affection, will do as much as they can for the child's welfare, education and guidance.
Austin, J.